PETER L. CARR, IV (#256104)
pcarr@thePLClawgroup.com
NA'SHAUN L. NEAL (#284280)
nneal@thePLClawgroup.com
LAUREN K. MCRAE (#331296)
lmcrae@thePLClawgroup.com
**PLC LAW GROUP, APC**
3756 SANTA ROSALIA DR., SUITE 326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE:  (310) 400-5895

ATTORNEYS FOR PLAINTIFF
**BOBBY ACEVES**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bobby Aceves,<br><br>        Plaintiff,<br><br>    vs.<br><br>City of Long Beach; Officer John Anthony Moran (117457); and DOES 1 through 10 inclusive,<br><br>        Defendants. | Case No: 2:21-cv-4625<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>**REQUEST FOR JURY TRIAL** |

## INTRODUCTION

1.    This case challenges the wrongful search, unlawful arrest and excessive force that deprived Plaintiff Bobby Aceves of his federal and state rights. Officer John Anthony Moran (117457) and DOES 1-10, inclusive, of the Long Beach Police Department abused their powers when they recklessly allowed a police canine to attack Mr. Aceves while he was asleep inside his home. Following this attack, Defendant Officers handcuffed, detained and arrested

Mr. Aceves, without probable cause or reasonable suspicion to believe that Mr. Aceves had committed a crime or was about to commit a crime.

2.   Plaintiff Mr. Aceves complains of Defendants City of Long Beach, Officer John Anthony Moran (117457) and DOES 1 through 10, inclusive, as follows:

## VENUE AND JURISDICTION

3.   Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988.  State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the City of Long Beach, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

## CLAIMS STATUTE REQUIREMENT

4.   On June 16, 2020, Plaintiff filed a timely Governmental Claims for Damages with the City of Long Beach.  On December 16, 2020, said Claims for Damages was denied by operation of law.

## PARTIES

5.   At all relevant times herein, PLAINTIFF Bobby Aceves (hereinafter "Mr. Aceves" or "Plaintiff") was and is a resident of the State of California in the County of Los Angeles.

6.   Defendant CITY OF LONG BEACH (hereinafter referred to as "CITY") is, and at all times in this complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LONG BEACH POLICE DEPARTMENT (hereinafter referred to as "LBPD") and its tactics, methods, practices, customs and usages.

7.     Defendant LBPD OFFICER JOHN ANTHONY MORAN (117457) (hereinafter "MORAN") is, and at all times in this complaint was, an individual employed by CITY and/or its subsidiaries as a police officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, CITY.

8.     At all relevant times mentioned herein and material hereto, the Defendant DOE Officers described below engaged in law enforcement as police officers, sergeants, captains, lieutenants, and/or civilian employees, agents and representatives of Defendant CITY, duly employed as police officers by the LBPD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

9.     PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sues said Defendants by such fictitious names. PLAINTIFF will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

10.    Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

## FACTS COMMON TO ALL COUNTS

11.    Mr. Aceves is a 40-year-old Hispanic male.

12.    On December 17, 2019 at approximately 1:30 p.m., Mr. Aceves was at his home, located at 239 West Artesia Blvd. in Long Beach, California. At the time, Mr. Aceves was asleep in his bedroom, because he was sick and had just

taken some NyQuil medication.

13.     As Mr. Aceves was sleeping, LBPD Officer Moran and DOE Officers 1-10, inclusive, entered his home with their police canine.

14.     Suddenly, the police canine bust through Mr. Aceves' bedroom door and ran towards Mr. Aceves.

15.     Mr. Aceves woke up in shock and lifted his arms, at which point the police canine viciously began biting Mr. Aceves' right arm and left leg.

16.     Mr. Aceves jumped off of his bed and cried out for help as the police canine continued gnawing and biting his left leg, buttock calf and ankle.

17.     Mr. Aceves crawled to the hallway and saw LBPD Officer Moran and DOE Officers, who then handcuffed Mr. Aceves, despite lacking any reasonable cause or probable cause to believe he was engaged in criminal activity.

18.     Mr. Aceves was weak and defenseless when Defendant Officers handcuffed him. At no point did Mr. Aceves pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Mr. Aceves made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that Mr. Aceves had the will or ability to inflict substantial bodily harm against any individual.

19.     Mr. Aceves remained in handcuffs as blood flowed from his dog bit wounds. Eventually, Defendant Officers transported Mr. Aceves to St. Mary's Hospital in Long Beach.

20.     After being discharged from the hospital, Defendant Officers transported Mr. Aceves to LBPD's booking facility, where Mr. Aceves was booked for violation of California Penal Code Section 148(a)(1) (i.e. resisting arrest/obstructing officer/delaying an investigation) and then sent to the men's jail .

21.     Mr. Aceves remained in jail for approximately two days, prior to being

released. At the time of his release, Mr. Aceves was provided a LBPD Certificate of Detention, which indicated he was released because there was insufficient grounds for making a criminal complaint against him, pursuant to California Penal Code Section 849(b).

22.   As a result of the Defendant Officers' conduct, Mr. Aceves suffered severe dog bites to his right arm, buttocks, left leg, thigh, calf and foot, resulting in several lacerations.  As a result of these injuries, Mr. Aceves has suffered and continues to suffer from motor and sensory deficits in his right arm and left leg, excruciating back, knee and ankle pain, a partial tear in his Achilles tendon, as well as difficulty walking and standing for extended periods of time. Moreover, as a result of the Defendant Officers' conduct, Mr. Aceves has suffered and continues to suffer from severe emotional distress, mental anguish, depression, anxiety, fear, paranoia, stress,  proprioception issues, insomnia, a loss of interest in normal activities, loss of appetite and an inability to concentrate at work. Additionally, Mr. Aceves has incurred special damages for medical expenses, litigation costs and loss of income.

23.   Defendants CITY, MORAN, and DOES 1 through 10, inclusive, owed to PLAINTIFF non-consensual duties set forth in California Penal Code Sections 118.1 (false police report): 148.5 (false report of a crime); 134 (preparing false evidence); 132 (offering false evidence); 127 (subordination of perjury); 137 (induce false testimony); 182(1) (conspiracy to commit crime); 182(2) (conspiracy to obstruct justice); 832.5 (personnel complaint investigations required); and Gov. Code § 1031 (duty to investigate hires).

## FIRST CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS – UNREASONABLE SEARCH
## 42 U.S.C. § 1983
### (Against MORAN and DOES 1 through 10, inclusive)

24.   Plaintiff incorporates by reference each and every allegation and fact

contained in the preceding paragraphs of this complaint as though fully set forth herein.

25.    This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

26.    As a result of the above-described intentional acts and omissions of Defendant Officers MORAN and DOES 1-10, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches, as applied to state actors by the Fourteenth Amendment, was violated when:

     a. Officers MORAN and DOES 1-10, inclusive, searched Mr. Aceves' person, without reasonable suspicion that Mr. Aceves had committed or was planning to commit any unlawful activity; and

     b. Officers MORAN and DOES 1-10, inclusive, ordered their police canine to bust through Mr. Aceves' bedroom door and attack him.

27.    The conduct of the Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

28.    As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful search, or because they failed to intervene to prevent these violations. At no point did Mr. Aceves pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Mr. Aceves made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that Mr. Aceves had the will or ability to inflict substantial bodily harm against any individual.

29.    Additionally, Defendant Officers acted entirely without probable cause or reasonable suspicion that Mr. Aceves had committed, was committing, or

1    would commit any crime.

2    30.    Accordingly, Defendant Officers are each liable to Plaintiff for

3    compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also

4    seeks litigation costs under this claim.

5                          **SECOND CAUSE OF ACTION**

6    **VIOLATION OF CIVIL RIGHTS - UNREASONABLE SEIZURE**

7                              **42 U.S.C. § 1983**

8              **(Against MORAN and DOES 1 through 10, inclusive)**

9    31.    Plaintiff incorporates by reference each and every allegation and fact

10   contained in the preceding paragraphs of this complaint as though fully set forth

11   herein.

12   32.    This cause of action arises under Title 42 United States Code § 1983,

13   wherein Plaintiff seeks to redress deprivation under color of law a privilege or

14   immunity secured under the Fourth Amendment.

15   33.    As a result of the above-described intentional acts and omissions of the

16   Defendant Officers, collectively and individually, Plaintiff's Fourth

17   Amendment constitutional right to be free from unreasonable seizures, as

18   applied to state actors by the Fourteenth Amendment, was violated when:

19        a.    Defendant Officers ordered their police canine to attack Mr. Aceves

20              without reasonable suspicion or probable cause to believe Mr.

21              Aceves was engaged in criminal activity or a threat to anyone's

22              safety;

23        b.    Defendant Officers handcuffed Mr. Aceves without reasonable

24              suspicion or probable cause to believe Mr. Aceves was engaged in

25              criminal activity or a threat to anyone's safety;

26        c.    Defendant Officers arrested Mr. Aceves without a warrant or

27              probable cause to believe Mr. Aceves was engaged in criminal

28              activity;  and

d.   Defendant Officers falsely imprisoned Mr. Aceves without a warrant or probable cause to believe Mr. Aceves was engaged in criminal activity.

34.   The conduct of the Defendants amounted to an unlawful detention, wrongful arrest, false imprisonment and excessive force.

35.   The conduct of the Defendants was willful, wanton, malicious and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

36.   As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries, either because they were integral participants in the unreasonable seizure, or because they failed to intervene to prevent these violations.

37.   Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

## THIRD CAUSE OF ACTION

## MUNICIPAL LIABILITY FOR UNLAWFUL CUSTOM AND PRACTICE

## 42 U.S.C. § 1983

## (Plaintiff Against Defendant CITY)

38.   Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

39.   Defendant CITY, is and at all times herein mentioned, has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California and at all times herein mentioned, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LBPD

and its tactics, methods practices, customs and usages.

40.      At all times herein mentioned, Defendants and each of them, were employees acting under the CITY and LBPD's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace deputies during their employment by the CITY.

41.      The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant CITY and LBPD include, but are not limited to:

a.      Searching, detaining and/or arresting civilians without proper legal justification;

b.      Using excessive force against civilians;

c.      Physically restraining civilians not reasonably suspected to be armed and dangerous;

d.      Fabricating probable cause in order to subject civilians to false arrest;

e.      Allowing police canines to physically attack civilians not reasonably suspected to be armed and dangerous;

f.      Failing to intervene when police canines use excessive force against civilians; and

g.      Negligently supervising police canines during searches;

h.      Refusing to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by CITY and LBPD

employees.

i.      Reprimanding, threatening, intimidating, demoting and firing employees who reported acts of abuse by other CITY and LBPD employees;

j.      Covering up acts of misconduct and abuse by CITY and LBPD employees and thereby sanctioning a code of silence by and among LBPD Officers;

k.      Failing to adequately supervise the actions of employees under its control;

l.      Failing to adequately train, supervise and control its LBPD officers in handling police canines.

m.      Failing to adequately train, supervise, and control LBPD officers in making detentions based on reasonable suspicions.

n.      Failing to adequately train, supervise, and control LBPD officers regarding uses of force;

o.      Tacitly condoning and encouraging use of excessive force on civilians; and

p.      Maintaining inadequate police canine unit policies, including, but not limited to, a wholly inadequate policy regarding use of police canines in homes.

42.      Defendants CITY and LBPD had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by LBPD employees, including the individual Defendants herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the Plaintiff's liberty interests.

43.      Defendant CITY and LBPD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by December 17, 2019, and thereafter, represented the unconstitutional policies, practices and customs of

the CITY and LBPD.

44.     The LBPD's unlawful deployment of excessive force and initiation of false arrests against innocent civilians is unfortunately not unique to Plaintiff. The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendants CITY and LBPD:

    a.    On February 15, 2020, Eugene Martindale III was seeking help during a mental health breakdown when LBPD officers violently arrested him.  A video captured by a witness during the incident shows an officer swinging a baton at Martindale's legs as two other officers hold him down on the ground. While Martindale was on the ground, an officer placed him in a painful wrist lock; another officer pinned Martindale down and placed him in a carotid control hold, to which Martindale cried, "I can't breathe!" Following the incident, Martindale filed a lawsuit against the City of Long Beach and its officers, alleging excessive force, negligence, unlawful arrest and intentional infliction of emotional distress, among other issues. https://ktla.com/news/local-news/civil-rights-lawsuit-accuses-long-beach-police-of-excessive-force-against-mentally-ill-black-man/.

    b.    On March 24, 2018, Christopher Williams was leaving the bar/restaurant area of the City of Long Beach, when a large fight broke out in a nearby parking lot. Williams was not involved in the fight and was not associated with any individual involved in the fight, but was standing nearby and began to video record with his cell phone. LBPD officers were dispatched to the fight. When officers arrived at the scene, they did not immediately move to intervene in the fight and instead watched the fight continue to unfold. As the fight progressed, Williams witnessed an unknown

man get knocked down. Then suddenly, an officer ordered Williams to put his hands behind his back. Williams complied and immediately informed the officer of his innocence. The officer, however, ignored Williams, aggressively twisted his arm behind his back and handcuffed him. When Williams cried out in pain, the officer told him to shut up. While handcuffed at the scene, Williams requested medical treatment for his arm to a LBPD sergeant. With knowledge that Williams was being detained/arrested without reasonable suspicion or probable cause, the sergeant, as supervising officer in charge, failed to intervene and timely release Williams. He further failed to act to provide medical attention to Williams. After Williams was detained in the police van for over an hour, an officer returned and apologized for detaining him when he was not involved in the fight. Williams was then released without being booked and without receiving medical attention; by that time, the fight had already been cleared and the crowd had dispersed. Shortly after his release Mr. Williams found that he could no longer move his right arm at all due to the injury he sustained when officers handcuffed him. The following day, Mr. Williams sought medical treatment and was diagnosed with a fractured elbow. (*Williams v. City of Long Beach, et al.*, 2:19-cv-5929).

c. On January 28, 2018, LBPD Officer Alatorre approached Mr. Cash with his gun drawn after Cash's wife explained the couple had been arguing but had not engaged in any physical altercation. When Cash tried to give officer his ID, the officers slammed him to the ground and Officer Alatorre began to repeatedly strike Cash with his metal flashlight, ultimately rupturing his Achilles tendon.

By the end of the beating, Cash had to be carried to a patrol car because he could no longer stand. Cash was arrested, but charges were never filed against him. Months later, on September 19, 2018, Officer Alatorre seriously injured Jose Encinas by hitting him in the back of his head with a metal flashlight. As a result of Officer Alatorre's use of force, doctors had to put Encinas into a medically induced coma.  In each of their lawsuits against the City and Officer Alatorre, Cash and Encinas allege the LBPD permitted Officer Alatorre to stay on the force despite knowing about his "violent propensities." Between 2014 and 2019, Long Beach paid out approximately $2.5 million in court cases that involved Officer Alatorre. In 2014, Long Beach agreed to pay $380,000 after a jury found Alatorre used excessive force on a man who officers beat and tasered, after Alatorre confronted him about playing music too loudly. The jury also found two other officers had either wrongly arrested or battered the man. In 2016, Long Beach paid $2 million to settle a wrongful death lawsuit against Alatorre and another officer for shooting 36-year-old Jason Conoscenti as he fled down a flight of stairs at the beach after a car chase with authorities in April 2014. https://lbpost.com/news/excessive-force-flashlight-lbpd-beat-alatorre.

d.   On September 3, 2013, LBPD officers used excessive force against Porfiro Santos-Lopez. Officers were dispatched to break up an altercation outside of a store between Santos-Lopez and two men. The two men fled when the officers arrived. As officers approached Santos-Lopez, who was shirtless and unarmed, he started to back away. Without reasonable suspicion to detain or probable cause to arrest Santos-Lopez, officers began to

continuously beat Santos-Lopez to the ground and repeatedly tasered him. Officers ignored Santos-Lopez as he cried out in pain and requested medical attention. When an ambulance was finally called, Santos-Lopez was taken to the hospital where he was treated for severe injuries, including multiple broken bones and severe abrasions. By the time Santos-Lopez filed suit nearly a year later, the LBPD had not disciplined any of the officers for their involvement in the incident. (*Santos-Lopez v. City of Long beach et al.* 2:14-cv-05781-FMO-AS);

https://www.latimes.com/local/lanow/la-xpm-2013-sep-06-la-me-ln-long-beach-police-arrest-video-20130906-story.html.

e.    In October 2011, LBPD Officers Alejandro Cazares, Julie Lacey Ackerman, Harrison Moore, and Tomas Diaz unlawfully searched, falsely arrested, and subjected to excessive force 62-year old Ray Webb. Webb's vehicle was pulled over by officers for allegedly having a broken taillight. During the stop, officers illegally searched his vehicle, ordered Webb and his passenger out of car, and then struck him with flashlights and batons more than 20 times. Officers proceeded to repeatedly shock Webb with a taser and placed him in several chokeholds. Webb was charged with cocaine possession and resisting arrest, but all charges were dropped less than two months following the incident. Webb has reportedly suffered from a heart attack and vision problems since his violent encounter with LBPD. Although Webb was awarded a $620,000 judgement for officers' violations of his civil rights in 2017, three of the involved officers remained employed by the LBPD that same year. (*Ray Webb v. J. Ackerman et al.* 2:13-cv-09112); https://www.latimes.com/local/lanow/la-me-ln-long-

beach-brutality-suit-20170503-story.html.

f.   On November 27, 2010 LBPD officers subjected two young men, Miguel Contreras and Miguel Vazquez, to excessive force. Officers responded to a call for service for a neighborhood disturbance. Despite the fact that shouting was heard from the opposite direction, officers accosted Vazquez, who was returning home from a nearby bar. Contreras, who is Vazquez' cousin, witnessed an officer violently striking Vazquez with a baton. When Contreras asked the officer to stop beating Vazquez, the officer ignored Contreras' and continued to strike him, breaking bones in Vazquez' hand. Then without warning, another officer struck Contreras from behind with a baton, knocking him to the ground and fracturing his left arm above the elbow. The officer hit Contreras with his baton at least 17 times, as bystanders begged the officers to stop. The officers proceeded to unlawfully arrest Contreras, handcuffing him as he lay on the ground. When Contreras requested medical attention for his fractured elbow, an officer violently grabbed him by his left arm and accused him of whining. Officers then drove Contreras to the local hospital, where staff diagnosed Contreras with multiple fractures and informed him, they would require immediate surgery. Contreras remains permanently disabled by the injuries he sustained from the excessive force used by officers. Although neither Contreras nor Vazquez had committed any crime, LBPD officers falsely arrested Vazquez for battery and resisting arrest. Immediately after his release from the hospital, Contreras filed a citizen's complaint with the LBPD internal affairs department, which the department refused to follow up on before closing the case without

interviewing any witnesses. None of the officers were disciplined even after the federal jury found them liable awarding Contreras and Vasquez $1.6 million. (*Contreras v. City of Long Beach et al.* 2:13-cv-03227-ABC-PJW);

https://losangeles.cbslocal.com/2016/10/12/two-men-awarded-1-6m-in-long-beach-police-beating/.

g.   A federal appeals court upheld a $1.75 million award to Jeffrey Grant, a man falsely arrested on serial rape charges following suggestive photo arrays and an inconclusive police-canine identification. Tinkerbelle, a LBPD canine, led police officers two miles from a crime scene to a twenty-unit apartment building full of people at a time when Mr. Grant was not at home. After spending ten minutes on the second floor, Tinkerbelle showed signs of confusion and could not identify any particular apartment or individual. She neither showed interest in Mr. Grant's apartment located on the first floor nor any other apartment on that floor. Furthermore, her handler testified that Tinkerbelle was young for a police dog, with only 150 opportunities to track during both training and active duty. The officers did not provide any evidence regarding Tinkerbelle's accuracy rate to bolster her reliability. *Grant v. City of Long Beach*, #01-56046, 315 F.3d 1081 (9th Cir. 2002).

h.   Defendant City and LBPD have cultivated a culture of cover-ups and corruption at the Internal Affairs Division and Long Beach Civilian Police Complaint Commission ("CPCC"). CPCC was created in 1990 by a City Charter to curb the corruption at the LBPD but has instead turned into a rubber stamp of the police.  In 2019, the CPCC "sustained" 52 accusations of police misconduct

ranging from excessive force to discourtesy. The city manager, however, ignored all but five of them. That same year, 91 of the 211 cases closed by the CPCC were classified as requiring no further action ("NFA"). Between 2016 and 2019, more than half of all cases it investigated were classified as NFAs—434 out of a total of 838.  In 2003, a former civilian investigator for the CPCC, Tomas Gonzales, investigated an NFA case while checking a batch to make sure they were properly classified. The case involved a 16-year-old boy whose skull was fractured during an encounter with LBPD officers. According to the officers, the teenager was in the vicinity of a burglary and, during a foot chase with officers, fell off a building's fence and onto concrete below; but a doctor who examined the boy believed he was more likely struck in the head with a gun. Gonzales says he went to the scene, where he discovered that the building cited in the police report had no concrete behind it, only grass. This was clearly a cover up. The case was reopened and, as a result, several officers were disciplined. Shortly after, Gonzales' 15-year career as a CPCC investigator ended, when he was fired for allegedly trying to develop a business relationship with a person he had helped on a complaint. Gonzales denied the allegations and sued the City, alleging that the CPCC's new executive director, a former police officer, was retaliating against him for aggressively pursuing officer misconduct. Last year, after more than a decade of litigation, the City settled Gonzales' whistleblower lawsuit for $775,000. https://lbpost.com/news/shattered-promise-of-police-oversight-still-haunts-long-beach-30-years-later.

i.    Defendant City and LBPD received enhanced public scrutiny in

2018 over their notorious use of Tiger Text cell phone application, a permanent self-deleting feature shielding information from discovery, in widespread use by all detectives assigned to narcotics, gangs, intelligence and homicide units- including detectives who investigate officer-involved shootings. https://beachcomber.news/content/tigerconnect-review-whitewash.

45.     On information and belief, Defendant Officers attended training programs related to police canine prior to the incident with Plaintiff.

46.     On information and belief, Defendant Officers attending training programs related to use of force prior to the incident with Plaintiff.

47.     On information and belief, Defendant Officers attending training programs related to investigation of crimes and lawful search and seizure prior to the incident with Plaintiff.

48.     Despite receiving training designed to prevent the conduct described in this Complaint, Defendant Officers violated Plaintiff's constitutional rights as described in the Complaint.

49.     Prior to the incident, CITY knew prior to the incident, its training program was insufficient to prevent the type of conduct experience by Plaintiff but did nothing to prevent the conduct.

50.     The Chief of Police of Long Beach is the final decision maker to determine if employee's actions were within policy and procedure and will determine whether any additional actions, investigations or reviews are appropriate.

51.     Plaintiff has submitted a complaint against the Defendant Officers complaining of Defendants' conduct.

52.     On information and belief, the Chief of Police reviewed the conduct described in the Complaint and either initiated a review of the conduct of Defendant Officers or declined the review of the conduct.

53.     The aforesaid policies, customs, practices and usages described in this Complaint were the moving force that caused Plaintiff to be subjected to unconstitutional policing by Defendant Officers on December 17, 2019.

54.     By reason of the aforesaid policies, customs, practices and usages, Plaintiff's First, Fourth and Fourteenth Amendments to the United States Constitution were violated.

55.     Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**

**NEGLIGENCE**

**Cal. Govt. Code §§ 815.2(a), 820(a)**

**(Plaintiff Against All Defendants)**

56.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

57.     Plaintiff is informed and believes and there upon alleges that Defendant Officers, and each of them, failed to exercise reasonable and ordinary care in committing the acts alleged herein, by actions and inactions which include, but are not limited to, negligently ordering/permitting a police canine to bust through Plaintiff's bedroom door and physically attack him, negligently handcuffing and arresting Plaintiff without probable cause or reasonable suspicion to believe that Plaintiff had or was committing a crime, negligently using excessive and unreasonable physical force upon the person of Plaintiff, when the same was unnecessary and unjustified, negligently searching Plaintiff without reasonable suspicion or probable cause to believe Plaintiff was armed or dangerous, negligently failing to intercede when fellow Defendant Officers violated Plaintiff's constitutional rights, as well as negligently supervising, training and disciplining subordinate officers. All of these negligent acts

proximately caused severe injuries to Plaintiff, as described herein.

58.    As a result of these acts, Mr. Aceves was placed in great fear of his life and physical well being. Moreover, due to the negligent acts of each of these Defendants, Mr. Aceves has suffered and will continue to suffer serious pain and severe mental anguish.

59.    As a proximate result of the above-mentioned conduct of Defendant Officers, and each of them, Plaintiff has been required to employ and did employ physicians to examine, treat, and care for him, and incurred other incidental medical expenses in an amount according to proof at trial. Additionally, as a result of Defendant Officer's negligence, Plaintiff has incurred litigation costs and damages for loss of income.

60.    Defendant CITY is vicariously liable for the wrongful acts of Defendants, individually and as peace officers, pursuant to sections 815.2(a) and 820(a) of the California Government Code, which provides that a public entity is liable for injuries causes by its employees within the scope of the employment if the employee's act would subject him or her to liability.

**FIFTH CAUSE OF ACTION**

**ASSAULT AND BATTERY**

**(Plaintiff Against All Defendants)**

61.    Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

62.    On December 17, 2019, Defendant Officers, acting individually and in concert with other law enforcement agents, assaulted and battered Plaintiff by acts which included, but were not limited to:  unlawfully ordering a police canine to attack Mr. Aceves; unlawfully arresting Mr. Aceves; and unlawfully handcuffing Mr. Aceves.

63.    In assaulting and battering Plaintiff as described herein, Defendant

Officers proximately caused severe and potentially permanent injuries to Mr. Aceves.

64.     Both prior to and during the time in which he was assaulted and battered, Mr. Aceves did not commit a crime, was not armed with any kind of weapon and posed no reasonable threat of violence to the Defendant Officers, nor to any other individual. When he was attacked, as described herein, Plaintiff made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that he had the will or ability to inflict bodily harm against any individual.

65.     As a result of the above alleged conduct, Plaintiff has suffered and continues to suffer serious bodily harm including, but not limited to, severe dog bites to his right arm, buttocks, left leg, thigh, calf and foot, resulting in several lacerations.  Moreover, Mr. Aceves was placed in great fear of his life and physical well-being. Moreover, due to the wrongful, intentional, and malicious acts of the Defendant Officers, Plaintiff has suffered and will continue to suffer extreme emotional distress and mental anguish.

66.     As a proximate result of the aforementioned conduct of Defendant Officers, and each of them, Plaintiff has been required to employ and did employ physicians to examine, treat and care for him, and incurred other incidental medical expenses in an amount according to proof at trial. Additionally, as a result of Defendant Officer's assault and battery, Plaintiff has incurred litigation costs and damages for loss of income.

67.     The aforementioned acts and omissions alleged herein were intended by each Defendant Officer to cause injury to Plaintiff, and were done with a conscious disregard for the rights and safety of Plaintiff, as the acts and omissions were willful, wanton, malicious and oppressive, thereby justifying the awarding of compensatory and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

68.     Defendant CITY is liable under California Government Code Sections 815.2(a) and 820(a) for Plaintiff's injuries proximately caused by the assault & battery committed by its employees, described above.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE BANE ACT

## Cal. Civil Code §§ 52 and 52.1

## (Plaintiff Against All Defendants)

69.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

70.     As alleged herein, Defendants interfered with Mr. Aceves' rights under state and federal laws and under the state and federal constitution including, without limitation, the right to be free from unreasonable search and seizure, the right to due process, and the right to bodily integrity, including his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and his rights under Article 1, Sections 1, 7 and/or 13 of the California Constitution.

71.     Defendants, by engaging in deliberate indifference to Mr. Aceves' right to be free from unreasonable searches and seizures interfered with Mr. Aceves' enjoyment of his rights under federal and California law, thus giving rise to claims for damages pursuant to California Civil Code § 52.1.

72.     As a result of their conduct, Defendants are liable for Mr. Aceves' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

73.     As a direct and proximate result of the aforementioned wrongful acts of Defendants, individually and as peace officers, Mr. Aceves sustained and incurred damages for physical injuries, emotional injury and pain, mental anguish, suffering, as well as loss of income, medical bills and litigation costs.

74.     The conduct of Defendant Officers, individually and as peace officers, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Aceves, entitling Plaintiff to an award of exemplary and punitive damages. Plaintiff does not seek punitive damages against the CITY.

75.     Defendant CITY is liable under California Government Code Sections 815.2(a) and 820(a) for Plaintiff's injuries proximately caused by the Bane Act violation committed by its employees, described above.

76.     Plaintiff seeks statutory damages under California Civil Code §52, as well as compensatory and punitive damages according to proof.

**SEVENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(Plaintiff Against All Defendants)**

77.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

78.     Defendant Officers, while working for the CITY as LBPD employees and acting within the course and scope of their duties, caused Mr. Aceves severe emotional distress on December 17, 2019 when:

    a.     Defendant Officers ordered their police canine to attack Mr. Aceves without reasonable suspicion or probable cause to believe Mr. Aceves was engaged in criminal activity or a threat to anyone's safety;

    b.     Defendant Officers handcuffed Mr. Aceves without reasonable suspicion or probable cause to believe Mr. Aceves was engaged in criminal activity or a threat to anyone's safety;

    c.     Defendant Officers arrested Mr. Aceves without a warrant or probable cause to believe Mr. Aceves was engaged in criminal

activity;  and

    d.   Defendant Officers falsely imprisoned Mr. Aceves without a warrant or probable cause to believe Mr. Aceves was engaged in criminal activity.

79.   Defendants' aforementioned conduct was outrageous and done so to cause Mr. Aceves emotional distress or done with reckless disregard to the probability that Mr. Aceves would suffer severe emotional distress.

80.   As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

81.   As a direct and proximate cause of Defendants' actions and inactions, individually and as a peace officers, Mr. Aceves suffered and continues to suffer serious physical pain and injuries for which he is entitled to recover damages. Moreover, due to the foregoing acts of each of these Defendants, Plaintiff has suffered and will continue to suffer severe mental anguish and emotional distress.

82.   Defendant Officers' conduct was a substantial factor in causing Mr. Aceves' severe emotional distress.

83.   In doing the aforementioned acts, Defendants' conduct was intentional, outrageous, malicious, and done for the specific purpose of causing Plaintiff to suffer extreme emotional and physical distress, fear, anxiety, and mental anguish, entitling Plaintiff to an award of exemplary and punitive damages as to the individual Defendants.

84.   Defendant CITY is liable under California Government Code Sections 815.2(a) and 820(a) for Plaintiff's injuries proximately caused by the intentional infliction of emotional distress committed by its employees, described above.

///

///

///

## **<u>PRAYER</u>**

WHEREFORE, PLAINTIFF requests entry of judgment in his favor and against Defendants as follows:

1.  For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2.  For special damages according to proof;

3.  For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4.  For prejudgment interest;

5.  For attorney's fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);

6.  For reasonable costs of this suit incurred herein;

7.  For such other and further relief as the Court may deem just, proper and appropriate.

Dated: June 4, 2021                                 **PLC LAW GROUP, APC**

*/s/Lauren K. McRae*
_____
Peter L. Carr, IV
Na'Shaun L. Neal
Lauren K. McRae
Attorneys for Plaintiff Bobby Aceves

1
2
3
4

## **REQUEST FOR JURY TRIAL**

5
6

PLAINTIFF hereby respectfully demands a trial by jury on all issues and claims.

7
8

Dated: June 4, 2021                                   **PLC LAW GROUP, APC**

9
                                                      */s/Lauren K. McRae*
10
                                                      Peter L. Carr, IV
11
                                                      Na'Shaun L. Neal
                                                      Lauren K. McRae
12
                                                      Attorneys for Plaintiff Bobby Aceves
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28